AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

for the

District of Kansas

6/7/2024

Clerk, U.S. District Court
By_____AA_____ Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 24-MJ-__6144__-01-GEB
INFORMATION ASSOCIATED WITH SNAPCHAT )
ACCOUNT ty_wick21 THAT IS STORED AT PREMISES )
CONTROLLED BY SNAP INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT ty_wick21 THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC.

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422 | Coercion/Enticement |
| 18 U.S.C. §§ 2251 and 2252A | Sexual Exploitation of Children, and Possession of Child Pornography |
| 18 U.S.C. § 1470 | Transfer of Obscene Material to a Minor |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kasev R. Sundar, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___6/7/2024___

_____
*Judge's signature*

City and state: Wichita, Kansas

Honorable Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
THE FOLLOWING SNAPCHAT
ACCOUNT:

Case No. _24-MJ-6144 - GEB_

USERNAME: TY_WICK21
DISPLAY NAME: TY WICK

THAT IS STORED AT PREMISES
CONTROLLED BY SNAP, INC.

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Kasev R. Sundar, Special Agent of the Federal Bureau of Investigation, being duly

sworn, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation, since

   January 8, 2021, and am currently assigned to the Kansas City Resident Agency, Wichita

   (Kansas) Office. While employed by the FBI, I have investigated federal criminal violations

   related to child exploitation and child pornography. I have gained experience through training

   at the Heart of America Regional Computer Forensics Laboratory in Kansas City, MO and

   everyday work relating to conducting these types of investigations. I have received training in

   the area of child pornography and child exploitation and have had the opportunity to observe

   and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all

   forms of media including computer media. At the Heart of America Regional Computer

   Forensics Laboratory, I received training and certifications in using the Cellebrite software to

   extract and analyze data from electronic media devices. I have also completed training,

provided by the FBI and the National Criminal Justice Training Center, on conducting Freenet investigations. Additionally, I have successfully completed the FBI's Computer Analysis Response Technician certification course and the FBI's Digital Extraction authorization course. I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252A, 2422, and 1470, and I am authorized by law to request a search warrant.

## PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. § 2703(a), 2703(b)(I)(A) and 2703(c)(1)(A) to require Snapchat to disclose to the government records and other information in its possession, further described in Attachment B, pertaining to the account(s) identified in Attachment A.

## CRIME(S) UNDER INVESTIGATION

3. As will be shown below, there is probable cause to believe that the following federal criminal violations have occurred and may be occurring:

    a. 18 U.S.C. § 2251, Sexual Exploitation of a Child

    b. 18 U.S.C. § 2252A, Possession/Receipt/Distribution of Child Pornography

    c. 18 U.S.C. § 2422, Coercion and Enticement

    d. 18 U.S.C. § 1470, Transfer of Obscene Material to a Minor

Additionally, as will be shown below, there is probable cause to believe that evidence, contraband, fruits or instrumentalities relating to the above federal criminal violations, further described in Attachment B, may be found in the account(s) identified in Attachment A.

4. The information in this affidavit has been communicated to me by other law enforcement investigators involved in this investigation, as outlined below. Since this affidavit is being

submitted for the limited purpose of supporting a search warrant, I have not included each and

every fact known to me or other investigators concerning this investigation. Instead, I have set

forth only those facts that I believe are necessary to establish the existence of probable cause

to support a search warrant.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent

   jurisdiction" as defined by 18 U.S.C. § 2711. See also 18 U.S.C. § 2703(a), (b)(1)(A) &

   (c)(1)(A). Specifically, the Court is "a District court of the United States that has jurisdiction

   over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## DEFINITIONS

6. The following definitions apply to this Affidavit and Attachment B:

   a. "Child Pornography" includes any visual depiction of sexually explicit conduct where (a)
      the production of the visual depiction involved the use of a minor engaged in sexually
      explicit conduct; (b) the visual depiction was a digital image, computer image, or
      computer-generated image that is, or is indistinguishable from, that of a minor engaged in
      sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified
      to appear that an identifiable minor is engaged in sexually explicit conduct.  See 18 U.S.C.
      § 2256(8).

   b. "Minor" means any person under the age of 18 years.  See 18 U.S.C. § 2256(1).

   c. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see
      18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict
      an identifiable minor, see 18 U.S.C. § 2256(8) (C).  In those contexts, the term refers to
      actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-
      anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation;
      (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas
      of any person.  See 18 U.S.C. § 2256(2) (A).

   d. "Visual depictions" include undeveloped film and videotape, and data stored on computer
      disk or by electronic means, which is capable of conversion into a visual image.  See 18
      U.S.C. § 2256(5).

   e. "Child Erotica" means materials or items that are sexually arousing to persons having a
      sexual interest in minors but that are not necessarily, in and of themselves, obscene or that
      do not necessarily depict minors in sexually explicit poses or positions.

f.  "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.

**TECHNICAL INFROMATION REGARDING SNAP, INC.**

7.  Snapchat is a mobile application designed, owned and operated by Snap, Inc. and available through the iPhone App Store and Google Play.  The application provides users the ability to share photographs, videos, and text messages.  Shareable content includes "Snaps," "Stories," "Memories," and "Chats."

8.  Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat app. Basic subscriber information may include a Snapchat username, email address, phone number, display name, Snapchat account creation date and IP address, and timestamp and IP address of account logins and logouts. The logs containing IP addresses associated with the account login and logout are retained for a limited period of time after the user has deleted their Snapchat account.

9.  "Snaps" allow a user to take photos or video using their mobile device's camera in real-time and then send those photos or videos to any of their "friends" or in a Story or Chat. Unless the sender or recipient opts to save the photo or video, the message will be deleted from the sender's device once the message is sent or the recipient's device after the message is opened. Snap, Inc.' s servers are designed to automatically delete an unopened Snap sent directly to a recipient after 30 days and an unopened Snap in Group Chat after 24 hours.

10. "Stories" are a collection of "Snaps" displayed in chronological order. These can be viewed by all Snapchat users, a user's "friends", or a custom audience depending on a user's privacy settings. Snap, Inc.'s servers are designed to automatically delete a user's "Story" 24 hours after the user posts the "Story", but the user may delete part or all of the "Story" earlier. Submissions to "Our Story" may be saved for longer periods of time.

11. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent "Snaps," posted "Stories," and photos and videos from their phone's photo gallery in "Memories." Content saved in "Memories" is backed up by Snap, Inc. and may remain in "Memories" until deleted by the user. Users may encrypt their content in "Memories" (called "My Eyes Only"), in which case the content is not accessible to Snap, Inc. and cannot by decrypted by them.

12. "Chats" is a feature within Snapchat that allows users to type messages, send "Snaps," audio notes, and video notes to their "friends." Snap, Inc.'s servers are designed to automatically delete one-to-one "Chats" once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's settings. Snap, Inc.'s servers are designed to automatically delete unopened one-to-one "Chats" in 30 days. Users are also able to chat in groups. "Chats" sent in groups are deleted after 24 hours whether they are opened or not.  A user can save a message in "Chat" by pressing and holding the message. The user can "unsave" the message by pressing and holding it again. This will delete it from Snap, Inc.'s servers. Users can also delete "Chats" that they have sent to a recipient before the recipient has opened the chat or after the recipient has saved the chat.

13. Snap, Inc. will collect location data at various points during a user's use of Snapchat if the user has device-level location services turned on and has opted into location services on Snapchat. The retention of this location data will vary depending on the purpose of the collection.  Users have some control over the deletion of their location data in the app settings.

## INVESTIGATION/PROBABLE CAUSE

14.  Highly summarized, this investigation involves an individual, Tyler BRETSCH, using his "ty_wick21" Snapchat account to engage a 14-year-old minor in sexually exploitative communications, with the minor being located in the District of Kansas.

**Referral of Case from Hutchinson Police Department**

15. On or about April 1, 2024, Hutchinson Police Department (HPD) received a report of an adult, Tyler Bretsch, engaging in sexual communications with a minor in Kansas. This report was later referred to the FBI due, in part, to Bretsch using the US mail to ship a package of sex toys from Iowa.

16. Per the report, the complainant was an adult female, hereafter identified as KH. KH reported to the HPD that her 14-year-old daughter, the Minor Victim (hereafter MV), had received a package via the U.S. Postal Service from an individual named Tyler Bretsch (hereafter BRETSCH). The package contained different brands of vapes and three boxed sex toys.

17. KH advised her sister-in-law, who lives at a different address, had received the package on March 30, 2024. KH's sister-in-law informed KH about the package when she saw that the package was addressed to MV. The sender was "Tyler Bretsch", and the return address was 904 Nile Kinnick Drive S, Adel, IA 50003, which is an address for a U.S. Post Office in Iowa. KH opened the package and found the aforementioned items.

18. KH advised she then called the U.S. Post Office in Adel, IA and was informed that BRETSCH works at that post office.

19. KH advised that on March 19, 2024, she found out MV had her cell phone without permission. KH found that MV was sending messages via to BRETSCH who used the username "ty_wick21" (SUBJECT ACCOUNT). KH then went through MV's cell phone and found sexually explicit and nude photos of MV. She then asked MV if she was sending pictures to BRETSCH, and MV acknowledged that she had sent pictures BRETSCH. MV also told KH that BRETSCH had sent pictures of his penis. KH believed that BRETSCH and MV might have begun communicating on March 12, 2024.

20. KH advised that, in the messages that she saw from BRETSCH, he told MV he would use one of the sex toys on himself before sending it to MV.

21. KH advised that, in one of the messages, MV told BRETSCH she was 14 years old, and BRETSCH responded by telling MV she did not want to know his age.

22. After speaking with the HPD officer, KH provided the package sent by BRETSCH and MV's cell phone to the HPD. KH consented to a search of MV's cell phone and signed a Consent to Search Electronic Media form.

**Forensic Interview of Minor Victim**

23. On April 10, 2024, MV underwent a forensic interview at Horizons Medical Health Center in Hutchinson, KS.

24. In her interview, MV described her communications with BRETSCH began after he added her as a friend on Snapchat, and she accepted his request. When she was communicating with BRETSCH via Snapchat, she did not know his name. MV said she found out the first name of the individual she had been communicating with via Snapchat is Tyler after he had sent her the aforementioned package.

25. According to MV, she did tell BRESTCH her name and age (that she was 14 years old) during their initial Snapchat communications, but BRETSCH never told MV how old he was.

26. According to MV, BRETSCH told her he could send her vapes and asked her if she also wanted him to send her sex toys. MV agreed to receiving sex toys. BRETSCH asked her if she would use the sex toys he sent her, and MV stated that she would use them. BRETSCH asked MV to send him pictures of her naked and performing sex acts on herself. BRETSCH would instruct her on what actions he wanted her to perform. MV complied because she

wanted vapes. MV also acknowledged that she began sending BRETSCH photos and/or videos of herself before she asked him to send her vapes.

27. According to MV, BRETSCH asked MV if she wanted to get pregnant and if she wanted him to send her some of his "cum". MV described that she told BRETSCH she did not want him to because she was unsure how she would have been able to inseminate herself inside her home and because she did not want to become pregnant.

28. According to MV, BRETSCH discussed with MV that he would "bless" one of the sex toys before sending the package of vapes and sex toys. MV explained that meant BRETSCH would "cum" on the sex toy before sending it to MV. MV said BRETSCH asked MV if she wanted him to send her sex toys "clean" or with his semen on at least one of them. MV told BRETSCH she did not care if he ejaculated on any of the sex toys before he sent them. MV explained she told BRETSCH she did not care because she intended to clean them before using them.

29. According to MV, BRETSCH also asked if MV would send him a video of herself using the sex toy on which he ejaculated on her vagina or throat. When BRETSCH and MV discussed the sending of sex toys, BRETSCH sent MV two photos depicting different sex toys. BRETSCH told MV he would also send her a dildo that was similar in size to his penis. MV claimed she was not particularly interested in the sex toys, but agreed to receive them because she wanted vapes.

30. According to MV, she often took videos of herself in the shower for BRETSCH. After sending a video of herself taking a shower, BRETSCH would send MV a video of him masturbating. BRETSCH and MV shared videos of themselves almost every day for roughly

one and a half weeks until KH found out about the communications. KH then seized MV's cell phone.

31. Regarding the package, MV explained that BRETSCH asked MV for an address to send the package of vapes and sex toys. MV asked a friend if the friend could provide her address for receipt of the package. MV stated her friend agreed, but her friend instead provided her with the address of MV's aunt who lives in the same apartment complex as her friend. MV believed BRETSCH would put her friend's name on the package. Instead, BRETSCH put MV's name on the package. MV's aunt contacted KH after receiving the package. MV stated that the three sex toys arrived in separate boxes inside the package. One of the boxes was opened, and MV believed that the sex toy in the opened box was the sex toy that BRETSCH had "blessed".

32. MV thought she sent BRETSCH over 10 pictures and/or videos of her breasts, vagina, wearing a sports bra and thong, and performing sex acts on herself. MV believed BRETSCH sent her between 5 to 10 pictures and/or videos of him masturbating.

33. MV stated she had partially seen BRETSCH's face in at least some of the images he sent her. She believed BRETSCH had long blond hair and a beard. She believed BRETSCH was over 18 years old because he would not tell her his age and because of the manner in which he communicated with her.

**Examination of Package Sent to MV**

34. On April 22, 2024, I examined the contents of the package sent to MV by BRETSCH. The package sender was "Tyler Bretsch", and the return address was 904 Nile Kinnick Drive S, Adel, IA 50003, which is the address for the U.S. Post Office where BRETSCH works.

35. The package was addressed to MV, and the destination address was the address for MV's aunt in Hutchinson, KS.

36. The contents included four boxes of vapes and three boxes of sex toys. I did not open any of the boxes containing vapes. I opened one of the three boxes containing sex toys that had already been opened by another individual and found the sex toy in the opened box was an item that was clear in color and in the shape of a penis. The other two boxes had labeling that read "vibrating bullet" and "Female Vibrator, G-Spot & Sex".

**Information Provided by Postal Inspection Service**

37. On April 16, 2024 and April 22, 2024, I spoke with a U.S. Postal Inspector, working out of Iowa, regarding BRETSCH. The Postal Inspector informed me that BRETSCH is currently a U.S. Postal Service employee in Adel, IA in the U.S. Post Office for zip code 50003. The Postal Inspector Service is aware that BRETSCH sent the package containing vapes and sex toys to MV from the post office where he currently works, and that post office should still have the tracking information for that package.

38. On April 24, 2024, the U.S. Postal Inspector forwarded me an email he had received from the Postmaster of the U.S. Post Office in Adel, IA. That email was an email sent by KH to the Postmaster on April 1, 2024, and the email contained several photographs of the contents, USPS labelling, destination address, and return address of the package BRETSCH had sent MV.

39. KH also included a photograph of MV's cell phone with the Snapchat app opened. This photograph shows two messages - one sent by MV and the other sent by BRETSCH - with MV's message of "Do you know when they get here? She want to know" followed by BRETSCH's reply "Well I'm going be mailing it today so couple days". Because the

labelling on the package shows that BRETSCH mailed the package on March 19, 2024, the messages were likely sent on or before March 19, 2024. Additionally, from context, the reference to "she wants to know" appears to be MV referring to MV's friend mentioned above, as MV mentioned during her forensic interview that she had asked her friend to provide her address to receive the package.

40. KH also included a photograph of "a photo he sent showing it's him using that Snapchat". The photograph depicted a white male seated inside a motor vehicle. His face was partially visible in the photograph. The male had a moustache and beard, and he was wearing a cap and what appeared to be a sweatshirt.

41. Per the email correspondence, the Postmaster forwarded KH's email to the U.S. Postal Inspection Service asking for their assistance. In his forwarded email, the Postmaster informed the U.S. Postal Inspection Service that she was contacted by KH who "states that her daughter was been snapchat with Tyler Bretsch." The Postmaster confirmed that BRETSCH is a rural carrier from the U.S. Post Office in Adel, IA. The Postmaster also stated, "I have talked with the clerk <name of clerk> and Tyler did indeed ask him to mail the package on the 19th. I can confirm that the male in one of the pictures is indeed Tyler."[1]

**Review of Minor Victim's Cell Phone**

42. On April 15, 2024, a digital forensics technician for the HPD performed digital extractions of MV's cell phone and provided me with the digital extractions after completing it. The digital extraction did show that MV communicated with the SUBJECT ACCOUNT.

---

[1] This information verifies what MV stated during her forensic interview when she mentioned that she had partially seen BRETSCH's face in at least some of the images he sent her. She believed BRETSCH had long blond hair and a beard.

43. The digital extraction captured a total of 28 messages shared between MV's Snapchat account and the SUBJECT ACCOUNT between March 17, 2024 at 04:51:49 UTC and March 20, 2024 at 03:33:29 UTC.

44. MV's account sent the first captured message on March 17, 2024 at 04:51:49 UTC that read: "Or <an individual's name>". Based on the first captured message, it appears that MV and BRETSCH had been in communication with each other before MV sent that message. In a subsequent phone conversation with the technician who performed the digital extraction, the technician informed me that the digital extraction he performed might not have been able to retrieve all the messages between MV and BRETSCH due to the security features on MV's cell phone and/or due to Snapchat messages often self-deleting from a user's app after a certain period of time.

45. MV's account also sent the final message March 20, 2024 at 03:33:29 UTC that read: "Just so you know, we have proof that you are sending vapes to underage. Children in law enforcement has been contacted." On April 22, 2024, I spoke with KH via cell phone who informed me that she sent that message to the SUBJECT ACCOUNT from MV's account after she learned that BRETSCH had sent a package to MV.

46. The remaining 26 messages between the first and last messages were all media files shared between MV's account and the SUBJECT ACCOUNT. None of the media files could be viewed. According to the technician who performed the extraction, this might also be due to the security features on MV's cell phone and/or due to Snapchat messages often self-deleting from a user's app after a certain period of time.

47. On April 23, 2024, I reviewed the videos saved on MV's cell phone and I identified 11 videos that depicted MV naked in a bathroom and/or shower. All of the videos appeared to have

been produced by MV. In five of the videos, MV appears is inserting her fingers into her vagina. In three of the videos, MV is exposing her breasts and her pubic region. In the remaining three videos, MV appears to be naked in a shower, but only her face, shoulders, and the top of her chest are visible.

48.  It is unclear if MV sent any of the 11 aforementioned videos to the SUBJECT ACCOUNT. However, since the videos were produced between March 7, 2024 at 04:21:46 AM UTC and March 19, 2024 at 01:53:49 AM UTC, I believe it is possible that MV sent some or all of these videos to BRETSCH because they were produced during or around the period of time when the two individuals communicated via Snapchat.

49.  On April 23, 2024, I also reviewed the images saved on MV's cell phone. I identified approximately 35 images that depicted MV wearing a sports bra and a thong and taking a picture of herself in front of a mirror. Additionally, I identified approximately 27 photos of MV where she appears to be naked in a bathroom and/or shower and is exposing either the top of her breasts, her entire breasts, or her vagina. It is unclear if MV sent these images; however, since the images were produced between March 6, 2024 at 06:15:09 AM UTC and March 19, 2024 at 11:45:32 PM UTC, I believe it is likely that MV sent some or all of the aforementioned because they were produced during or around the period of time when the two individuals communicated via Snapchat, during the period MV described exchanging images with BRETSCH.

### Search Warrants for BRETSCH's Property and Person

50.  On May 9, 2024, United States Magistrate Judge Helen Adams (Southern District of Iowa) issued search warrants for the residence, person, and cars of Tyler BRETSCH (respectively, Southern District of Iowa matters 4:24-mj-209, -210, -211, -212).

51. Pursuant to those search warrants, investigators seized devices from BRETSCH for examination for evidence relating to violations of 18 U.S.C. §§ 2251(a), 2422(b), 2252A(a)(5)(B), and 1470.

52. During the execution of those search warrants, investigators contacted and interviewed Tyler BRETSCH. Prior to beginning the interview, investigators informed BRETSCH that he was not under arrest, and the interview would be completely voluntary. They also informed BRETSCH he was not obligated to answer any of their questions, he could stop answering questions at any time, and he was free to leave the place of the interview at any time. BRETSCH acknowledged the information provided by investigators and agreed to speak with them.

53. BRETSCH advised he used a variety of social media platforms. He described using Kik to engage in group chats with girls. BRETSCH described using two different accounts on Snapchat, including "ty_wick21" (SUBJECT ACCOUNT), with the latter being used to make new friends.

54. BRETSCH claimed that other Snapchat users have tried to sell photographs of nude adults and nude children to his "ty_wick21" account. BRETSCH advised he had purchased photographs of nude adults from individuals he met via Snapchat.

55. BRETSCH acknowledged to sending the package containing the four vapes and three sex toys to MV. During their communications, BRETSCH claimed that he had joked with MV about sending her a dildo that was the size of his penis. BRETSCH remembered telling MV he wanted to "bless off on it" when referring to the dildo, which meant he ejaculated on the dildo before placing it into the package he would send her. BRETSCH did send MV a video of him ejaculating on the dildo.

56. At the time he was communicating with MV, BRETSCH was going through a lot of stress due to family issues and working two jobs. He began communicating with MV because he needed help in relieving his stress. He therefore asked MV to send him videos of herself. BRETSCH knew MV was 14 years old before he asked her to send him videos of herself. BRETSCH knew MV would send him videos of herself naked, and he did not ask her to stop sending him videos.

57. During the interview, I presented BRETSCH with sanitized exhibits of MV. After seeing the sanitized screenshots of the videos depicting MV, BRETSCH acknowledged receiving those videos from MV. BRETSCH also acknowledged that he sent MV pictures of his penis and videos of him masturbating via Snapchat.

58. BRETSCH has communicated with minor females on Snapchat before and after communicating with MV. He believed has communicated with at least five other minor females. At least one of those females has sent him sexually explicit pictures and videos of herself. BRETSCH has most likely sent pictures of his genitalia and videos of him masturbating to all these minor females.

**Additional Information regarding BRETSCH's use of Snapchat**

59. On May 2, 2024, I spoke with a BRETSCH's ex-fiancée (hereafter "SE") via cell phone. SE informed that in the summer of 2022, she learned that BRETSCH had sent her friend (then 20 years old) pictures of his genitalia via Snapchat. After she broke off their engagement, another friend of SE informed SE that BRETSCH had also sent pictures of his genitalia to SE's younger sister, who was 16 or 17 years old at the time.

66. When SE spoke to her sister Minor Victim 2 (hereafter MV2) about BRETSCH sending her pictures of his genitalia, MV2 acknowledged receiving such pictures, and informed SE that BRETSCH had also sent pictures of his genitalia to another minor, Minor Victim 3 (hereafter

MV3). SE later asked MV3 if she had received such pictures, and MV3 acknowledged she had. MV3 was approximately 16 years old at the time.

67. On May 14, 2024, I interviewed MV3 in-person in Iowa. MV3 stated that in the summer of 2022, when Jane Doe 2 was 16 years old, she messaged BRETSCH via Snapchat to congratulate him for the birth of his and SE's child. MV3 informed BRETSCH that she was willing to baby-sit their newborn child.

68. BRETSCH replied to MV3's offer by telling her he knew what she could do to help him. BRETSCH then sent MV3 a picture of his genitalia and asked her to send him nude pictures of herself. He claimed that the nude pictures of MV3 would help him with his stress.

69. MV3 confirmed that BRETSCH had sent her pictures of his genitalia via Snapchat. BRETSCH had also asked her to send him nude pictures of herself. MV3 advised he used both of his Snapchat accounts for these communications.

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

70. From my own experience as an FBI Special Agent and from conversations with experienced investigators, including those at the Kansas Internet Crimes Against Children task force, I have learned the following regarding child pornography offenders:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

   b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children.

   c. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own

feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.

d.  The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

71. In this investigation, BRETSCH has demonstrated many of the aforementioned characteristics. Knowing her age, BRETSCH communicated with MV via Snapchat to entice her into sending him sexually explicit images and videos. Knowing her age, BRETSCH sent the MV a package that contained three sex toys, which he intended for the MV to use on herself while creating a recording for him. Additionally, BRETSCH has admitted to engaging in similar sexually exploitative conduct with at least five other minor females.[2]

72. Affiant asserts that, because of the many characteristics which BRETSCH manifests (discussed above), the Snapchat account that he used for these communications, and through which he received the sexually explicit images, is likely to contain evidence of his persistent interest in child exploitation and child pornography, as well as evidence of contacts with other like-minded offenders.

## CONCLUSION

73. Based on the foregoing facts, there is probable cause to believe the above-identified Snapchat account (further described in Attachment A) has been involved in violations of 18 U.S.C. §§

---

[2] Aside from being crimes themselves, evidence of such communications would be extremely relevant evidence of the crime under investigation relative to MV, as such may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. See Fed. R. Evid. 404(b)(2). The seizure and collection of such evidence is a necessary predicate to the consideration of whether such is admissible.

2251(a), 2252A(a)(5)(B), 2422(b), and 1470, and that evidence relating to those criminal offenses will be located in the account described above.

74. Based on the foregoing facts, there is probable cause to believe the above-identified Snapchat account (further described in Attachment A) contains contraband, namely child pornography, and such should be seized as otherwise authorized by Federal Rule of Criminal Procedure 41(c)(2).

75. Further, I submit that such evidence, listed in Attachment B to this affidavit, constitutes contraband, the fruits of crime, things otherwise criminally possessed, or property, which is or has been used as the means of committing the foregoing offenses.

76. Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the account identified in Attachment A for the items listed in Attachment B.

Kasev R. Sundar
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 7th day of June 2024.

THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

## **ATTACHMENT A**

### **Description of Account(s) to Searched/Examined**

This warrant applies to information associated with the Snapchat account identified by Snapchat username "ty_wick21" and by Snapchat display name "Ty Wick" that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered in Santa Monica, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be disclosed by Snapchat**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc. ("Snapchat"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information in its entirety to the government for the user ID listed in Attachment A:

(a)     All contact and personal identifying information provided to Snapchat, during the registration process or at any time thereafter;

(b)     All public-facing profile information for the account,

(c)     All contacts of the account, lists of approved users, and including the privacy settings associated with such lists;

(d)     All groups and networks of which the user is a member;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, the identified account, including the hardware model, operating system version, unique device identifiers, and mobile network information;

(f)     The types of service utilized by the user;

(g)     All privacy settings and other account settings for the identified account;

(h) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(i) All photos and videos uploaded by that user and all photos and videos uploaded by any other user to that account, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and video;

(j) All activity logs, including IP addresses, for the account and all other documents showing the user's Snapchat activities;

(k) All other records and contents of communications and messages made or received by the user;

(l) All IP logs, including all records of the IP addresses that logged into the account; and

(m) All records pertaining to communications between Snapchat and any person regarding the identified account, including contacts with support services and records of actions taken.

Snapchat is hereby ordered to disclose the above information to the government within **30 DAYS** of issuance of this warrant. (Snapchat may request an extension, and such extension may be authorized by the receiving agent or agency, Kasev R. Sundar of the FBI.)

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of the criminal violations of 18 U.S.C. §§ 2251, 2252A, 2422, and 1470, as described in the Affidavit, including information pertaining to the following matters:

(a) The identity of the person(s) who created or used the Snapchat account, including records that help reveal the whereabouts of such person(s);

(b) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Snapchat account owner;

(c) Evidence indicating the Snapchat account owner's state of mind as it relates to the crimes under investigation;

(d) Evidence of obscene visual depictions of minors engaged in sexually explicit conduct, child pornography, child erotica, and communications pertaining to child pornography, child sexual abuse, and child sexual exploitation; and

(e) Evidence showing communications with or about minors.

This warrant authorizes a review of electronically stored information, communications, other records, information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.